CLERK'S OFFICE U.S. DIST. COURT
AT DANVILLE, VA
FILED for RJK

APR 30 2010

JOHN F. CORCORAN, CLERK
BY: HMcDonald
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| BERNARD BARNETT, Plaintiff, | Civil Action No. 7:09-cv-00068 |
| v. | **MEMORANDUM OPINION** |
| TERRY O'BRIEN, et al., Defendants. | By: Hon. Jackson L. Kiser Senior United States District Judge |

Bernard Barnett, a federal inmate proceeding pro se, filed a civil rights complaint, pursuant to Bivens v. Six Unknown Federal Narcotics Agents, 403 U.S. 388 (1971), with jurisdiction vested in 28 U.S.C. § 1331. Plaintiff alleges that the defendants violated his Eighth Amendment right to be free from cruel and unusual punishment and conducted a "sham" investigation of the violations. The defendants filed a motion for summary judgment, and plaintiff filed an unverified response, making the matter ripe for disposition. After reviewing the record, I grant the defendants' motion for summary judgment.

I.

A.

The record, supported by plaintiff's verified complaint and defendants' affidavits, reflects the following facts. See Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007) (stating a court must consider the complaint with its referenced documents). Plaintiff arrived at the United States Penitentiary in Lee County, Virginia ("USP Lee"), on January 6, 2004, without any particular medical complaints aside from a recent bout of sinusitis. (Pl.'s medical R. (no. 41).)[1] In April 2008, plaintiff felt like something inside him was wrong because he quickly tired

---

[1] Prior to the incidents described in the complaint, plaintiff's medical records shows that plaintiff received external medical care in May 2004 for an upper-respiratory tract infection that healed the same month. Plaintiff saw a facility doctor during a sick call in April 2005, who did not find evidence of a sinus infection. Plaintiff reported to

and had foul breath, headaches, and a bloated stomach. (Compl. 12.) In May 2008, plaintiff's stomach became bloated and his ankles swelled up to the size of grapefruit. (Compl. 12.) Plaintiff reported to the medical department, and a physician's assistant ("PA") examined him. The PA advised plaintiff to stop playing sports, but plaintiff explained that he had not exercised or played sports for months and had "numerous sympto[m]s" within the prior sixty days. (Compl. 12.) Plaintiff told the PA that "something is terribly wrong inside" of him. (Compl. 12.) Plaintiff requested crutches, a full exam, and x-rays of his stomach, chest, and bowels. The PA declined the requests, diagnosed him with excessive gas, gave him a bandage, and advised him to purchase Advil from the commissary. Plaintiff requested to see the facility doctor, but the doctor was not present and later refused to see plaintiff based on the PA's notes.

Plaintiff started sweating, hurting, and vomiting on July 13, 2008, at around ten o'clock at night. Two hours later, plaintiff's cell mate called for medical assistance, and staff at USP Lee brought plaintiff to the Lee Regional Medical Center ("Hospital"). Hospital staff diagnosed plaintiff with a ripped colon, installed a colostomy bag, and observed two hernias above his genitals and gallstones in his gallbladder. (Compl. 11; Allred Aff. (no. 41) ¶¶ 14-16.)[2]

After a six-day hospital stay, plaintiff was stable and back at USP Lee. Defendant Roff,

---

sick call in November 2005, requesting a complete annual physical examination without experiencing any specific complaints. The medical staff told plaintiff that an examination would not be done during a sick call and he need to make an appointment for that exam. Plaintiff experienced a viral infection in March 2006, and medical staff issued him a work idle that allowed him to recuperate in his cell for up to three days. Plaintiff also visited medical staff in January 2007 for pain in his left shoulder.

[2]Technically, an abdominal X-ray revealed "suspected pneumoperitoneum," and Hospital staff discovered "acute purulent peritonitis secondary to perforated sigmoid colon." The Hospital staff performed a "resection of the perforated sigmoid colon with end colostomy and Hartmann pouch, umbilical herniorrhaphy, and an appendectomy." The Hospital staff noted that plaintiff had "at least one gallstone which would require elective cholecystectomy in the future in a more stable and desirable medical circumstance[]" and a "bilateral inguinal hernia which will require future repair with mesh graft."

the Health Services Administrator at USP Lee from April 2001 until October 25, 2008, met with plaintiff on July 23, 2008. (Roff. Aff. (no. 37, Ex. 3) ¶¶ 2, 6.) They discussed plaintiff's Hospital discharge instructions, limitations, and care plan at USP Lee. (Id.) Plaintiff also received a pain medication prescription and a first floor bottom-bunk assignment.

Plaintiff allegedly received improper medical care for numerous months upon his return to USP Lee related to a urinary tract infection from not having any antibiotics and then receiving too much antibiotics for six weeks. (Compl. 15.) Plaintiff reported to medical again on August 24, 2008. On the 24th, plaintiff said he urinated every fifteen minutes with difficulty, pain, and straining. Staff tested his urine, performed an in-and-out catheterization, prescribed a sulphur-based antibiotic, and instructed him to drink plenty of fluids and to return if he has further problems.

Plaintiff returned several days later with similar complaints, and staff determined that his bladder was distended. The PA tried to catheterize plaintiff's urethra to help pass the excess urine. Plaintiff complains that the PA failed to properly insert the tube three times and the final attempt caused excessive bleeding. Medical staff consulted with defendant Allred, who is a licensed physician, board certified by the American Osteopathic Association, and was the Clinical Director at USP Lee from June 2005 until December 7, 2008. (Allred Aff. (no. 41) ¶¶ 2-3.) With Allred's approval, medical staff sent plaintiff to the Hospital for evaluation and treatment. The Hospital waited several hours for the bleeding to stop, installed a urine tube and urine bag, and returned plaintiff to USP Lee the same day.

On August 29, 2008, plaintiff had a follow-up appointment with defendant Allred, who noted that a urologist examined plaintiff and conducted a Foley catheter. The Hospital also

recommended a short dose of medication to reduce prostate spasms and infection.

Thereafter, plaintiff needed a restroom to empty both his urine and feces bags. Roff issued colostomy bags to plaintiff on October 1, 2008, which was shortly before Roff left USP Lee on October 25, 2008. Plaintiff alleges that the bags are designed to last two to three days but he has to use them for ten to fifteen days. Plaintiff alleges that the medical department did not have a health services administrator in November 2008 after Roff left USP Lee and the subsequently hired administrator orders only one box of bags at a time. (Compl. 24.) Thus, plaintiff was allegedly forced to reuse his bags while a new box of bags is being delivered to the prison. Plaintiff complains that the bags' deodorizers stop working after a couple of days and that the smell of wastes from the bags attached to his body is "absolutely awful." After plaintiff wears the bags for a couple of days, he removes the bags every couple of hours to wash them. Plaintiff alleges that he begs medical staff to remind the new administrator to order at least three boxes of bags at a time. (Compl. 24.)

Plaintiff alleges that he then received too much antibiotics for too long, causing an allergic reaction. (Compl. 16.) Plaintiff received two antibiotics, which were 1700 m.g. and 650 m.g. and to be taken twice a day for six weeks. (Compl. 17.) Plaintiff asked the doctor and PA if this amount was too much; the PA said it was normal, and the doctor never responded. (Compl. 17.) This allergic reaction caused hives, welts, and extremely itchy skin. The PA did not see plaintiff for a couple of days but then gave plaintiff "a shot in the butt" that provided relief for six to ten hours. However, the reaction returned, covering him from head to toe with hives, welts, itches, and patches of scratched, bleeding skin. Plaintiff "was in extreme[,] severe discomfort and mentally crazy." (Compl. 16.) Plaintiff alleges he is now permanently allergic to sulphur.

4

In September 2008, the Hospital surgeon conducted a follow-up examination of the June colostomy surgery and noted that plaintiff did well following it except for his urinary tract problems. He also noted that the Foley catheter had been used but was removed since the examination was satisfactory. The Hospital doctor further noted that plaintiff's abdomen was completely benign, the colostomy was functioning well, and the incisions healed well. The Hospital doctor requested another follow-up examination near the end of November 2008 when he would consider re-establishing the intestinal continuity and closure of colostomy.

Defendant Allred left USP Lee on December 7, 2008, and on December 10, 2008, it was determined that plaintiff needed a rectal biopsy after closing the colostomy and reconnecting the bowel because of the discovery of tiny nodules in his rectum. Plaintiff had his colostomy closed and bowel reconnected at the Hospital on February 18, 2009, which was slightly delayed because of the rectal nodules. The rectal biopsy subsequently indicated that the nodules were not malignant. After waiting several days for complications from the previous surgery to subside, plaintiff received surgery on February 26, 2009, for his inflamed non-reducible hernial sac that repaired a direct left inguinal hernia without a mesh graft.

Plaintiff returned to USP Lee on March 2, 2009, and was subsequently transferred to USP Canaan, Pennsylvania, arriving on March 25, 2009. Two days after his arrival, plaintiff had a request made on his behalf to medically repair a reducible right inguinal hernia. Plaintiff received an abdominal ultrasound on May 13, 2009, that detected gallstones. In July 2009, plaintiff received surgery that repaired his right inguinal hernia. Plaintiff's follow-up examinations in July revealed clean wounds with no drainage and without infection, recurrence of the hernia, or pain.

Plaintiff complains that he waited seven months for his colon to be reconnected, instead of the four-weeks it should have taken. (Compl. 25.) Plaintiff alleges that the PA's three failed attempts damaged his bladder and prostate gland because he bled from his penis for four days and the pain lingered even longer. (Compl. 17.) Plaintiff also alleges that his prostate is damaged and at risk of further infection, as is the one-inch hole on the side of his stomach. (Compl. 25.) Plaintiff alleges that Dr. Allred failed to supervise the PA, thereby causing plaintiff further harm, and denied plaintiff hernia and gallstone surgery, in violation of the Eighth Amendment. (Compl. 20.) Plaintiff alleges Roff denied plaintiff his requested surgery and failed to supervise the doctor and the PA. Plaintiff alleges that Warden O'Brien caused cruel and unusual punishment by approving the denial of his hernia and gallstone surgeries. (Compl. 19.) Plaintiff further alleges that Bureau of Prisons ("BOP") attorney Stevens conducted a sham investigation of his grievance and falsified information to deny his claim. Plaintiff requests $150,000 compensatory and $1.5 million punitive damages. Plaintiff also requests an order requiring the BOP to perform the hernia and gallstone operations, to check his prostate, and to pay future medical costs incurred within the next five years related to his colon, hernia, gallstones, prostate, and urinary tract. (Compl. 21-22.)

II.

A.

A party is entitled to summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and

that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).[3] Material facts are those necessary to establish the elements of a party's cause of action. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A genuine issue of material fact exists if, in viewing the record and all reasonable inferences drawn therefrom in a light most favorable to the non-moving party, a reasonable fact-finder could return a verdict for the non-movant. Id. The moving party has the burden of showing – "that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). If the movant satisfies this burden, then the non-movant must set forth specific facts admissible as evidence that demonstrate the existence of a genuine issue of fact for trial. Fed. R. Civ. P. 56(c); id. at 322-23. A party is entitled to summary judgment if the record as a whole could not lead a rational trier of fact to find in favor of the non-movant. Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991).

Conversely, summary judgment is inappropriate if the evidence is sufficient for a reasonable fact-finder to return a verdict in favor of the non-moving party. Anderson, 477 U.S. at 248. Even if there is no dispute as to the evidentiary facts, summary judgment is also not appropriate where the ultimate factual conclusions to be drawn are in dispute. Overstreet v. Ky. Cent. Life Ins. Co., 950 F.2d 931, 937 (4th Cir. 1991). A court may not resolve disputed facts nor weigh the evidence, Russell v. Microdyne Corp., 65 F.3d 1229, 1239 (4th Cir. 1995), nor make determinations of credibility, Sosebee v. Murphy, 797 F.2d 179, 182 (4th Cir. 1986). Rather, the party opposing the motion is entitled to have his or her version of the facts accepted

---

[3] The parties received reasonable and explicit notice when the Clerk issued a timely Roseboro notice that I may convert a motion to dismiss that references matters outside the pleadings into a motion for summary judgment. See Fed. R. Civ. P. 12(d). Plaintiff filed an unverified motion for summary judgment in response.

as true and, moreover, to have all internal conflicts resolved in his or her favor. Charbonnages de France v. Smith, 597 F.2d 406, 414 (4th Cir. 1979). Inferences that are "drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." United States v. Diebold, Inc., 369 U.S. 654, 655 (1962).

B.

Defendants argue that plaintiff failed to exhaust his administrative remedies for several claims. The Prison Litigation Reform Act provides that "[n]o action shall be brought with respect to prison conditions under [Bivens] . . ., by a prisoner confined in any jail, prison or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The exhaustion requirement is mandatory, Anderson v. XYZ Correctional Health Services, Inc., 407 F.3d 674, 677 (4th Cir. 2005), and "applies to all inmate suits about prison life[,]" Porter v. Nussle, 534 U.S. 516, 532 (2002). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules." Woodford v. Ngo, 548 U.S. 81, 90 (2006). Where the prison provides an administrative grievance procedure, the inmate must file a grievance raising a particular claim and pursue it through all available levels of appeal to "properly exhaust." Id. Letters or communications filed outside the grievance procedures do not constitute exhaustion. See Sloan v. United States, No. 3:01CV347, 2002 WL 32502088 at *3 (E.D. Va. July 10, 2002), aff'd 63 Fed. App'x. 174 (4th Cir. 2003). An inmate's failure to exhaust is an affirmative defense and the burden is on the defendant to prove the failure to exhaust. Jones v. Bock, 549 U.S. 199, 216 (2007).

To fully exhaust a Bivens claim, a federal prisoner must properly raise his grievance

8

through all levels of the BOP's Administrative Remedy Program.[4] See 28 C.F.R. §§ 542.10, et seq. If unable to resolve his complaint informally, an inmate may file a formal written complaint on the proper form within twenty calendar days of the complained act. 28 C.F.R. § 542.14(a). If not satisfied with the warden's response, the inmate may file an appeal on the appropriate form to a regional director within twenty calendar days of the prior response. 28 C.F.R. § 542.15(a). An inmate who is not satisfied with a regional director's response may file within thirty calendar days a final administrative appeal of a regional director's response on the appropriate form to the BOP's General Counsel. Inmates have not exhausted administrative remedies until they have filed their grievance to all levels. Woodford, 548 U.S. at 90.

The defendants attached the affidavit of a BOP paralegal who accesses the BOP SENTRY computer database. The SENTRY database tracks, inter alia, plaintiff's medical records, administrative grievances, and tort-claim filings. The SENTRY system shows that plaintiff exhausted administrative remedies regarding hernia and gallbladder surgery. However, plaintiff did not exhaust administrative remedies about the failure to permit surgery for closure of the colostomy; the "sham" investigation into his administrative tort claim; the failure to order colostomy supplies; or the failure to identify his colon rupture on an earlier physical examination. Plaintiff's reply to this statement was his unverified statement that it was not possible to grieve

---

[4] FTCA claim exhaustion is different. Claimants seeking to bring an action under the FTCA against the United States for money damages must first present the claim to the appropriate agency and have the claim finally denied by the agency. See 28 U.S.C. § 2675(a); McNeil v. United States, 508 U.S. 106, 113 (1993) (finding that pro se litigants are bound by the requirement of filing an initial claim to appropriate agency). Although plaintiff included his denial letter from the BOP regarding his federal tort claim, he only presented arguments under Bivens for this action and does not address any FTCA cause of action. Accordingly, I address the complaint under Bivens, as presented. See Brock v. Carroll, 107 F.3d 241, 243 (4th Cir. 1997) (Luttig, J., concurring); Beaudett v. City of Hampton, 775 F.2d 1274, 1278 (4th Cir. 1985). See also Gordon v. Leeke, 574 F.2d 1147, 1151 (4th Cir. 1978) (recognizing that district courts are not expected to assume the role of advocate for the pro se plaintiff).

these issues before they happened. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-88 (1986) (stating that the party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of his pleading but must come forward with specific facts showing that there is a genuine issue for trial). However, plaintiff also failed to grieve these issues after they happened. Accordingly, I dismiss these claims without prejudice and continue to review plaintiff's claims regarding his hernia surgeries and gallstones.

C.

A plaintiff must show that a defendant acted with deliberate indifference to a serious medical need in order to state a claim under the Eighth Amendment. Estelle v. Gamble, 429 U.S. 97, 104 (1976). See Farmer v. Brennan, 511 U.S. 825, 839-40 (1994) (finding that case law involving § 1983 claims is applicable in Bivens actions, and vice versa). In order to show deliberate indifference, a public official must have been personally aware of facts indicating a substantial risk of serious harm, and the official must have actually recognized the existence of such a risk. Farmer, 511 U.S. at 838. "Deliberate indifference may be demonstrated by either actual intent or reckless disregard." Miltier v. Beorn, 896 F.2d 848, 851 (4th Cir. 1990). The prisoner must demonstrate that defendants' actions were "[s]o grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." Id.

Medical staff may also be found to be deliberately indifferent by intentionally denying or delaying access to medical care or by intentionally interfering with a prescribed course of treatment. Estelle, 429 U.S. at 104-05. Where an alleged constitutional violation is based on an allegation of delay in treatment, the court must measure the propriety of the delay against the severity and

immediacy of the medical condition involved. Loe v. Armistead, 582 F.2d 1291 (4th Cir. 1978).

Supervisory liability under Bivens must be supported with evidence that: (1) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to people like the plaintiff; (2) the supervisor's response to the knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff. Shaw v. Stroud, 13 F. 3d 791, 799 (4th Cir. 1994) (citing Miltier, 896 F.2d at 854). Thus, supervisory liability is not established merely by showing that a subordinate was deliberately indifferent to a plaintiff's needs. Miltier, 896 F.2d at 854. Moreover, non-medical supervisors can rely on the judgment of the medical staff to determine the course of medical treatment. Id.

A medical need serious enough to give rise to a constitutional claim involves a condition that places the inmate at a substantial risk of serious harm, usually loss of life or permanent disability, or a condition for which lack of treatment perpetuates severe pain. Sosebee, 797 F.2d at 181-83. Although a hernia may be serious enough to invoke the Eighth Amendment, plaintiff received hernia surgery following the rectal biopsies and closure of his colostomy. However, plaintiff fails to establish that having gallstones is a serious medical treatment that entails a substantial risk of serious harm or perpetuates severe pain without treatment.

Furthermore, plaintiff's claims of medical malpractice and negligent diagnosis are not cognizable in a Bivens proceeding. Id. at 179. See Johnson v. Quinones, 145 F.3d 164, 168-69 (4th Cir. 1998) (noting that treating doctors must actually draw the inference that an inmate's symptoms

signify the presence of a particular condition and that a failure to draw such an inference may present a claim for negligence but not a claim under the Eighth Amendment). Plaintiff's disagreement with medical personnel over the course of his treatment does not state a Bivens claim. Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985); Russell v. Sheffer, 528 F.2d 318, 319 (4th Cir. 1975) (per curiam).

Moreover, plaintiff fails to establish Allred's or Roff's deliberate indifference to his hernia surgeries and gallstones. Plaintiff alleges that defendants Allred and Roff provided constitutionally deficient medical care although Allred and Roff were not plaintiff's medical treatment providers for the time plaintiff, Allred, and Roff were at USP Lee[5]. During this time, the record reflects that plaintiff received significant medical care to treat his ailments and conditions when he presented them to medical staff. Plaintiff's complaints regarding the onset of his emergency condition on July 13, 2008, did not manifest in other symptoms that plaintiff brought to medical staff's attention to which the staff recklessly disregarded. Rather, a PA examined plaintiff and exercised his medical judgment to render a medical opinion. The record does not support a claim that any defendant was deliberately indifferent to plaintiff's impending medical emergency.

Most notably, plaintiff does not allege how Roff or Allred recklessly disregarded any of his ailments because he fails to link their action or inaction to his medical needs. Roff met with plaintiff on July 23, 2008, after plaintiff's surgery at the Hospital. Roff explained plaintiff's discharge instructions, new housing assignment, and ostomy care instructions. Roff also gave

---

[5]They were at USP Lee as follows: plaintiff between January 2004 and March 2009; Allred between June 2005 and December 7, 2008; and Roff between April 2001 and October 25, 2008.

plaintiff ostomy bags and flanges three weeks before Roff left USP Lee.[6] Dr. Allred routinely referred plaintiff to outside medical care. Regarding plaintiff's complaints about elective medical care, the Hospital doctor characterized his gallstone problem as an elective surgery, not Allred or Roff. Regardless, an allegation of malpractice for mischaracterizing an emergency surgical procedure as an elective one does not contravene the Eighth Amendment even if a defendant mischaracterized the severity of a surgical procedure. See Webb v. Hamidullah, 281 Fed. App'x. 159, 2008 WL 2337608, *6 (4th Cir. June 6, 2008) (unpublished) ("Although the consequences of failing to prescribe an essential surgical procedure can be serious, any medical malpractice committed with respect thereto, or malpractice committed by mischaracterizing an emergency surgical procedure as an elective one, will not contravene the Eighth Amendment.").

Furthermore, plaintiff does not establish Allred's or Roff's supervisory liability for acts done by a subordinate. Plaintiff does not establish that a medical staffer who exhibited deliberate indifference reported to Allred or Roff. Although plaintiff disagrees with the diagnosis and, inter alia, complains about the quality of treatment provided by the PA, these allegations do not rise to an Eighth Amendment violation against Roff or Allred because he does not establish their constructive knowledge of deliberate indifference nor a causal link nor between them and any other USP Lee staffer.

Plaintiff also fails to establish that the defendants were responsible for any alleged delay in his treatment or that the delay resulted in substantial harm. To the contrary, plaintiff's medical treatments were delayed to investigate other related medical conditions and complications that

---

[6] Plaintiff acknowledges that Roff was no longer the Health Services Administrator at USP Lee as of November 2008.

13

may have negatively impacted the surgery and his health. See Sealock v. Colorado, 218 F.3d 1205, 1210 (10th Cir. 2000) ("Delay in medical care only constitutes an Eighth Amendment violation where the plaintiff can show that the delay resulted in substantial harm."). Plaintiff received hernia surgery after his colostomy closure and rectal biopsy. The Hospital's doctor delayed the hernia surgery until plaintiff's colon was repaired and his biopsies were clear. Plaintiff's two hernias were repaired in February and July 2010, many months after plaintiff was no longer associated with defendants Allred, Roff, or O'Brien. Although the record does not reveal the status of plaintiff's gallstones, the removal of which the Hospital doctor classified as an elective procedure, plaintiff is no longer in the defendants' care nor did he establish that his gallstones constitute a serious medical need.[7]

Plaintiff argues that Warden O'Brien is liable as the warden simply because he oversees all USP Lee departments and denied his institutional grievance about his medical care. Warden O'Brien avers that he is not personally involved with inmates' medical care and relies on the professional judgment of trained medical personnel to make inmates' medical treatment decisions. (O'Brien Aff. (no. 37, Ex. 4) ¶ 3.) Plaintiff does not allege that O'Brien was involved with plaintiff's medical care. See Boyce v. Alizaduh, 595 F.2d 948, 953 (4th Cir. 1979) (where the plaintiff-inmate's complaint nowhere indicated that supervisory defendants neglected his needs, and where the prison physician promptly saw the plaintiff and engaged in a course of treatment, the supervisory defendants were "beyond any doubt not liable to the plaintiff under any conceivable state of facts."). Therefore, plaintiff's allegation against Warden O'Brien fails

---

[7]Plaintiff acknowledged that the gallstones were not related to his colon rupture, do not go away by themselves over time, and stress him mentally; plaintiff believes that he should not have to wait until they hurt him for them to be removed. (Compl. 15.)

to establish an Eighth Amendment violation concerning his medical care. Accordingly, Warden O'Brien is entitled to summary judgment.

III.

For the foregoing reasons, I dismiss without prejudice plaintiff's claims about colostomy supplies, colostomy closure surgery, failure to identify colon rupture, and the "sham" investigation; grant the defendants' motion for summary judgment; deny plaintiff's motion for summary judgment; and deny the remaining motions as moot.

The Clerk is directed to send copies of this memorandum opinion and the accompanying order to the plaintiff and counsel of record for the defendants.

**ENTER**: This 30th day of April, 2010.

Senior United States District Judge